Board of Education of South Milwaukee vs. State ex rel. Reed.

THE BOARD OF EDUCATION OF THE CITY OF SOUTH MILWAU-KEE and another, Plaintiffs in error, vs. THE STATE EX REL. REED, Defendant in error.

*September 1 — September 20, 1898.*

*Public schools: Reinstatement of teacher:* Mandamus: *Officers.*

1. A teacher employed by a school board under a contract containing the usual stipulations is not an officer of the district, but is a mere employee of the board, and the relations and obligations between them are purely contractual. For any breach of the contract by the board, therefore, the remedy by an ordinary action at law is plain and adequate, and *mandamus* will not lie to compel the board to reinstate him or pay his salary.

2. *Mandamus* is not the proper proceeding in which to test the question of the relator's title to an office which another is occupying under claim of right or title.

ERROR to review a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

The proceeding sought to be reviewed by the writ of error in this case was by alternative *mandamus* against the

*Board of Education of the City of South Milwaukee* and others, sued out of the superior court of Milwaukee county upon the relation of *George H. Reed.* Its object was to compel said board to reinstate him as principal of the high school located in that city, under a school contract with the district hereinafter stated, namely, high school district No. 1 of the city of South Milwaukee, dated July 2, 1897, and to compel the *Board of Education of the City of South Milwaukee* to recognize and conform to said contract, and to issue and deliver to him orders of the board of education of said city, signed and certified by the secretary of said board, drawn on the city treasurer, directing him to pay out of the school fund in his hands appropriate thereto the sum of $111.11, which became due October 8, 1897, for teachers' salary, and a like further sum which became due him on November 5, 1897. There was a motion to quash the alternative writ on the ground that it appeared from its face that there was a defect of parties defendant, the city of South Milwaukee not being made a party defendant, and that it did not appear that there were funds on hand applicable to the payment of the orders mentioned in the writ, and that the relator had an adequate remedy at law; and, further, that the writ and relation did not state facts sufficient to authorize the issuing of a peremptory writ, or to entitle the relator to the relief therein demanded, or to any relief whatever by *mandamus.*

The motion to quash was denied, and the respondents below then made return to the alternative writ, to which the relator demurred, upon the ground that the same did not state facts sufficient to constitute a defense. The demurrer was sustained, with leave to the respondents below to amend their return as they might be advised, and, in default of such amendment and proof thereof, a peremptory writ should issue as prayed for, and judgment should go thereon conformably to law and the practice of the court. The respondents failed to amend their return, and judgment was

entered ordering and adjudging that a peremptory writ issue commanding the respondents to reinstate the said relator, *George H. Reed*, as principal of the high school of high school district No. 1 of the city of South Milwaukee, under his said written contract as such principal entered into and made by him with the late high school board of said high school district, bearing date July 2d, and that they recognize and conform with said contract thereafter, and issue to him the said orders for the moneys claimed to be so due and owing on said contract.

This writ of error is sued out to review said judgment. It appears from the record:

(1) School district No. 1 of the town of Oak Creek, Milwaukee county, was organized prior to 1890, comprising territory which now composes about the east two-thirds of the city of South Milwaukee, and lying wholly within the limits of said city.

(2) In 1890, by proceedings taken under sec. 490, R. S. 1878, the district became a free high school district.

(3) The district, in 1872, acquired certain land for a school site, and built a school-house thereon, which, since 1890, has been used as a high school and common school; the affairs of the district, the management of the school, and the appointment of teachers being under, and made by, the high school board of the district, down to the incorporation of the city of South Milwaukee, July 6, 1897, and, in fact, down to the election and qualification of the board of education of such city, September 4, 1897.

(4) June 29, 1897, the duly elected high school board of said district appointed *George H. Reed* as principal of the school for the then ensuing year, commencing September 13th, and on July 2, 1897, entered into a written contract with him to teach said school as principal for such ensuing year, at $1,000 per annum, salary to be paid at the end of each month, in the sum of $111.11, for the school year of nine months.

(5) July 6, 1897, the annual school meeting of the said high school district was held, at which the period of the ensuing school year was fixed at nine months. July 7, 1897, the high school board met and ratified the acts of its predecessor in appointing teachers.

(6) On the 6th of July the city of South Milwaukee received a patent from the state incorporating it as a city of the fourth class, and its incorporation became thereby perfected on that day by the issue of said patent. Laws of 1897, ch. 287, sec. 98. September 1, 1897, its common council, proceeding under sec. 3, ch. 380 (p. 1032), Laws of 1897 [sec. 925—113, Stats. 1898], determined by ordinance that the members of the board of education of the city should be elected by the common council. On September 4, 1897, the council elected such members, who on that day qualified and organized.

(7) The board of education, at its first meeting, passed a resolution to the effect that it would not recognize the appointments or contracts of the high school board, and directed its secretary to notify the teachers of such action. September 11th the board of education reappointed all teachers of the said school in all its departments save *Mr. Reed*, the relator, and fixed the opening of the school for September 13th. September 13th *Mr. Reed* attended at the school pursuant to his appointment, and under his said school contract for the school year, and on that day opened and organized the school, and taught that day. Before the hour of opening school on the following day, September 14th, he was served with a restraining order obtained in a suit brought in the superior court of Milwaukee county by the board of education, in the name of the city, against him and others, enjoining them from entering upon the school grounds, and requiring them to show cause why an injunction to that effect should not issue. This motion for an injunction was, October 30, 1897, denied as to *Mr. Reed*, on the ground that

his school contract was valid and binding on the board of education as the successor of the said high school board, by virtue of the incorporation of the city under the general city charter law of 1897 (ch. 287, sec. 98).

(8) September 29, 1897, the board of education made a contract with one J. E. Roets as principal of such school, and placed him in charge thereof, and, notwithstanding the said decision of the court of October 30th, and the fact that *Mr. Reed* had, to the knowledge of said board, been at all times ready to carry out his said contract, the board of education refused to recognize his contract in any way, but persisted in excluding him from the school and retaining Mr. Roets as principal.

The judgment recited the making of the contract with the relator, *Reed*, a teacher legally qualified to teach school in said district, for the term of nine months, for the sum of $1,000, the term commencing on the 13th day of September, 1897, to be paid at the end of each month, in the sum of $111.11; and that the city of South Milwaukee had been incorporated July 6, 1897, as a city of the fourth class; and that September 4, 1897, the common council of said city duly elected a board of education of said city, and said board was organized the same day; and that, disregarding its duty, September 14, 1897, said board caused the said *George H. Reed* to be removed from said school, and prevented, and still prevents, him from entering into the same, and from discharging and fulfilling his duties under said contract, although said petitioner has at all times been ready and willing to perform such duties, to the knowledge of said board; and also recited the fact that the sum of money claimed by him had become due and payable; that it, the said board, unjustly refused to reinstate the said *Reed* in his said position as principal of said school, or to issue to him the said orders, to his injury, etc.

The peremptory writ was issued May 7, 1898, pursuant

and in substance according to the judgment so rendered. To this judgment the respondents, the *Board of Education of the City of South Milwaukee*, and *Dennis Sweeney*, as secretary of said board, sued out the present writ of error.

For the plaintiffs in error there was a brief by *Joseph G. Davies*, attorney, and *David S. Rose*, of counsel, and oral argument by *Mr. Rose*.

For the defendant in error the cause was submitted on a brief by *Jared Thompson, Jr.* To the point that *mandamus* would lie in this case, he cited *Joint Free High School Dist. v. Green Grove*, 77 Wis. 532; *State ex rel. Van Vliet v. Wilson*, 17 id. 687; *State ex rel. Stanley v. Van Siclen*, 43 Hun, 537; *Gilman v. Bassett*, 3 Conn. 298; *Morley v. Power*, 5 Lea, 691; *Thompson v. Board of Education*, 57 N. J. Law, 628; *Butcher v. Charles*, 95 Tenn. 532; *People ex rel. Devery v. Martin*, 13 Misc. (N. Y.), 21; *State ex rel. Burpee v. Burton*, 45 Wis. 150; *State ex rel. Gill v. Common Council of Watertown*, 9 id. 254, 258.

PINNEY, J. The relations, duties, and obligations that existed between the relator, *Reed*, and the high school board of high school district No. 1 of South Milwaukee were purely and strictly of a contractual character. This is clearly apparent from the written contract between the parties contained in the record. *Butler v. Regents of University*, 32 Wis. 131. The high school board consisted of three persons, who were, respectively, director, treasurer, and clerk of the said district. On the 29th of June the board, at a regular meeting, appointed the relator principal of the said school for the ensuing year, at a salary of $1,000, and on the 2d of July made and entered into said contract with him, the validity of which is vigorously contested between the parties. Proceedings had been initiated by the trustees of the village of South Milwaukee looking to the organization of the said village as a city of the fourth class by the name of

the city of South Milwaukee, which was subsequently com-
pleted, and at the first meeting of the common council
it was determined by ordinance that the members of the
board of education of said city should be elected by the com-
mon council, and a full board was accordingly elected and
qualified September 4, 1897. Up to this time the school and
educational affairs of said city had been under the charge
and management of the said high school board, and teachers
had been selected for the then ensuing year. On Septem-
ber 4th the board of education of said city passed a resolu-
tion to the effect that it refused to recognize contracts made
by said high school board, and directed its secretary to no-
tify teachers that the board would consider applications for
positions in said school on the 10th day of September, and
that no contract theretofore made by the high school board
would be ratified or accepted. Subsequently all the former
teachers were employed except the relator, *Reed.* He at-
tended when the time arrived for opening the school, and
took charge of the same under his said contract, and taught
there during one day. On the following morning he was
served with an injunctional order issued by the superior
court of Milwaukee county, in an action brought in the name
of the city against the relator and others, by which the
relator was enjoined from entering upon the school grounds,
or going into or about the school buildings, or doing or per-
forming or exercising any acts, or commanding or directing
any of the teachers so employed by said board of education.
On September 29th the board of education employed one
John E. Roets as principal, at a salary of $1,100 per annum,
and directed the officers of said board to enter into a con-
tract with him accordingly, and he was placed in charge of
the said school and taught the same thereafter. The board
of education refused to reinstate the relator, or recognize
him as principal, or his said contract, or to conform thereto
or comply therewith, although said injunctional order had
been vacated.

It does not appear to be material to consider or determine whether the contract with the relator was a valid one. It contained the stipulations ordinarily found in such contracts. Assuming its validity for the purposes of the present case, it is apparent, as stated, that the relations and obligations between the relator, *Reed*, and the high school board of said district were purely and strictly of a contractual character. He was a mere employee, and not an officer of the district in question, and had no official relations to it. His services were to be rendered in consideration of a certain stipulated compensation. He was not an officer, within the meaning of the constitution and laws. The board, and the school district acting through its board, would seem to have been but a legally constituted agency for carrying out the plans and educational policy of the state within the district, with powers adapted to that end, the contract between the parties imposing on them for that purpose reciprocal duties. The contention of the relator is that the high school board and the board of education of the city have violated and disregarded the contract with him, so that he cannot and has not realized the benefits and advantages expected to result from its provisions. The case appears to be the ordinary one of a violation of contract duties, and the relator seeks to obtain by *mandamus* a remedy for these alleged wrongs. The question, therefore, arises whether the court, by proceedings in *mandamus*, can entertain the relator's case, and grant him the relief he has prayed.

It is, we think, too plain for controversy, that the relator's remedy is the very plain and common one that any party has against one with whom he has made a contract, which such other neglects or refuses to perform, namely, an action for the recovery of such damages as he has sustained in consequence of such neglect or refusal. He has a plain and adequate remedy by action at law. The existence or non-existence of an adequate and specific remedy at law, in the ordinary forms of legal procedure, is therefore one of the

first questions to be determined in all applications for the writ of *mandamus;* and whenever it is found that such remedy exists, and that it is open to the party aggrieved, the courts uniformly refuse to interfere by the exercise of their extraordinary jurisdiction by *mandamus.* High, Extr. Leg. Rem. § 15. "The rule is too firmly established to admit of doubt or controversy that, if there be any other adequate and specific remedy, such as an action at law against the corporation, by which relief may be had by the aggrieved claimant, *mandamus* will not lie to compel municipal authorities, or their auditing boards or officers, either to audit or to pay claims against the corporation. Indeed, the rule is simply the application of the principle, which underlies the entire jurisdiction by *mandamus,* that the existence of another adequate and specific legal remedy is a bar to relief by this extraordinary writ, and the courts will put in requisition their extraordinary powers only in cases where no remedy may be had in the usual course of proceedings at law. It is not the province of *mandamus* to settle differences of opinion between municipal authorities and claimants as to amounts due for services rendered. All such cases of disputed accounts or claims against the municipality should be referred to the arbitrament of a jury, or to the ordinary process of the courts, and they will not be determined by proceedings in *mandamus.*" Id. § 339. *People ex rel. Steinson v. Board of Education of N. Y.* 60 Hun, 486, and cases cited; *Portman v. State Board of Fish Comm'rs,* 50 Mich. 258. It was there held that *mandamus* would not lie against a public board upon the suit of an employee thereof for redress for a breach of contract, but that he might have a claim for damages. In *People ex rel. Lunney v. Campbell,* 72 N. Y. 496, the court remarked that "the relator had a clear legal right to sue for all damages he had sustained by reason of the refusal of the defendant, as commissioner of public works, to execute and carry out a contract which the relator claimed to

be entitled to perform as the lowest bidder for the work;" and proceeded to say: "No rule is better settled by the decisions of the courts than that in such a case *mandamus* will not lie.    *People ex rel. Perkins v. Hawkins*, 46 N. Y. 9.    On the relator's own showing, he has an adequate and complete remedy by action."    The same point is ruled in *People ex rel. Steinson v. Board of Education*, 60 Hun, 486; and in *People ex rel. Tenth Nat. Bank v. Board of Apportionment*, 64 N. Y. 627.    The new corporation at once repudiated any relation to or with the former organization, and it was immediately dissolved.    The *Board of Education of the City of South Milwaukee* never employed or contracted with the relator.    The conclusions reached in *Butler v. Regents of University*, 32 Wis. 131, appear to support these views.

For the reasons stated, we think that the relator's remedy in the present case was by action at law for the recovery of damages, and not by peremptory *mandamus*.    If, however, it could be maintained that the position of teacher is an office, or a right to a place, so as to constitute a franchise, position, or privilege, so that *mandamus* could be maintained, then, inasmuch as it appeared that there was a person other than the relator or claimant in the place or position in question, who was occupying it under a claim of right or title,— a *de facto* incumbent under a contract of subsequent date,— a proceeding by *mandamus* is not the proper action in which to test the question of his title.    *State ex rel. Lewellen v. Smith*, 49 Neb. 755; *Heath v. Johnson*, 36 W. Va. 782; *People ex rel. Wren v. Getting*, 133 N. Y. 569.

*By the Court.*— The judgment of the superior court is reversed, and the cause is remanded to that court to dismiss the proceeding.

BARDEEN, J., dissents.