## Bentley et al. v. Conneaut Township School District et al.

*Clarence T. Bryan, Lindley R. McClelland* and *Byron A. Baur*, for plaintiffs.

*Herbert J. Johnson, Jr.,* and *James W. Evans,* for defendants.

LAUB, J., February 1, 1952.—Defendant school district is a member of a consolidated school district known as the Albion Area High School. Defendant district, in company with the other districts signatory to the consolidation, has entered into arrangements with the State Public School Building Authority whereby the authority is to construct a school building for the benefit of the consolidated district. Under

the proposed plan, and as stipulated by statute, the completed school building is to be leased to the consolidated district for a term of 38 years.

Plaintiffs, tax paying citizens of defendant school district, brought this bill in equity to restrain final consummation of the plan on the ground that it is illegal, unconstitutional and ill-advised. The bill also seeks to surcharge the school directors and the supervising principal for money spent by the district in traveling expenses and otherwise in investigating and promoting the proposed arrangement.

After hearing, the chancellor dismissed the bill at the cost of plaintiffs and the matter is now before us upon exceptions to the adjudication. . . .

Plaintiffs raise one new proposition which merits discussion. In support of their exception to the chancellor's first conclusion of law (that the project and the instruments executed by defendant school district in furtherance thereof is not and are not illegal or unconstitutional), they advance the argument that the contract to lease commits the school district to pay rentals to an unlimited and undefined amount. This, they maintain, is unconscionable and illegal.

. The basis for the present argument lies in the provisions of paragraph 5 of the contract to lease. In substance this paragraph, inter alia, provides for two separate contingencies. The first is that if the estimated cost of the project, as determined by *bona fide* responsible bids by contractors, exceeds the maximum amount stated in the contract to lease (in this case $695,800), then the contract is to be null and void. The second contingency provided for in the contract is, if at any time after construction has begun, the sum of the amounts already paid on account of the cost of the project and the amount which will become due and payable in order to complete the project, less any contributions made by the consolidated district, shall

exceed the maximum amount above stated, then the State Public School Building Authority may nevertheless issue additional bonds and complete the project, subject, however, to the approval of the Department of Public Instruction. Annual rentals may be adjusted under this contingency, to conform to the new costs. This latter provision prompts plaintiffs to advance their present argument.

Scrutiny of the contract and the applicable law leads to the conclusion that there is nothing illegal or unconscionable in the disputed clause. Initially it must be observed that the contract itself, in paragraph 1, provides for the construction of the school building in accordance with the plans and specifications to be approved by the Department of Public Instruction, the Joint School Board, the individual school districts and the authority. These are the plans which must be let out on bid and it is upon the basis of these plans that the maximum cost of the project is determined. If such maximum cost is exceeded in the bidding, then the contract is a nullity. It is true that the authority has reserved the right to complete the building once it has been commenced if the cost exceeds the maximum cost set forth in the contract, but there are two important limitations upon that right. The first limitation rests in paragraph 1, supra, which further provides that the authority may only make minor changes in the plans and specifications. The second limitation is that set forth in the fifth paragraph, namely, that before the authority can proceed to complete the building (where the maximum cost will be exceeded) it must first obtain the approval of the Department of Public Instruction. This is a highly important provision which will be discussed later in this opinion.

Under what circumstances may defendant school district be obligated to pay a higher rental than the one set forth in the contract to lease? Obviously, it

cannot be so obligated if the bidding shows that the project will cost more than the maximum amount. It is equally obvious it cannot be so obligated unless there are "extras" or other considerations which increase the cost above the maximum amount and that any changes in the plans must be approved by the interested parties, must be minor in nature and subject to the approval of the Department of Public Instruction. Plaintiffs read into paragraph 1 of the contract that the authority is the sole body empowered to determine what changes shall or shall not be made in the plans or specifications. The paragraph clearly states that the plans and specifications (and these necessarily include those for extras) must be approved by the interested bodies. The language, "together with such minor changes as may be made from time to time to be approved by said Authority", must be lifted out of context to supply the meaning ascribed to it by plaintiffs.

Assuming a highly improbable and speculative situation in which both the contractor and his bonding company become bankrupt so that additional costs will be required to complete the building, the authority is still not in a position to obligate defendant school district beyond the contract terms without the approval of the Department of Public Instruction. Conceding this, plaintiffs urge that the discretion of the school district is one which cannot be delegated to said department. This position overlooks one highly important consideration. Article X, sec. 1, of the Constitution requires that the General Assembly provide for the maintenance and support of a thorough and efficient system of public schools. This has been interpreted to mean that all contracts bearing upon education, or legislative determinations of school policy, are subject to legislative control: Teachers' Tenure Act Cases, 329 Pa. 213, 225. It has also been declared that

school districts are but agencies of the State legislature to administer this constitutional duty: Wilson v. Phila. School Dist., 328 Pa. 225, 231. Education then is a highly important governmental function and the duty to exercise and control it rests with the General Assembly. This, of necessity, reverses the argument of plaintiffs to the point where we can say with certainty that the legislature, having delegated its authority to the school district in any matter pertaining to education, may repossess itself of the power so delegated. This it has done by the enactment of the State Public School Building Authority Act of July 5, 1947, P. L. 1217, as amended, 24 PS §791.1 *et seq.*, which, in section 4 (24 PS §791.4), provides:

"The Authority is created for the purpose of constructing, improving, maintaining and operating, public school buildings, and furnishing and equipping the same for use as public schools, as a part of the public school system of the Commonwealth of Pennsylvania under the jurisdiction of the Department of Public Instruction." Of extreme importance in connection with the present discussion is that portion of clause (n) of the above section of the act which provides: "The Department shall have authority and its duty shall be to review all construction projects to determine: (4) The ability of the local school district or districts to amortize the cost of the project, and to defray the cost of operation and maintenance."

In view of the second limitation set forth in the fifth paragraph of the contract to lease mentioned above (the prerequisite approval of the department), no danger appears that the school district shall be committed to an unlimited rental charge. There is a presumption that the department will exercise its duties in accord with the mandates of the law and this presumption is fortified by the fact that its head, the Superintendent of Public Instruction, is a constitu-

tional officer, made so by article IV, sec. 1, of the Constitution.

Only one other matter needs be commented upon. Plaintiffs, in their brief, complain that the chancellor took judicial notice of customary clauses which appear in leases of the type under discussion. It is their contention that such notice could not be taken in the absence of proof thereof. A careful reading of the discussion of the chancellor reveals that he did not take judicial notice of any custom. True, he did refer to customary clauses in exactly the same manner as did the Supreme Court in Hagan Lumber Company v. Duryea School District, 277 Pa. 345, 349, but this was done by way of argument only and was not the basis for his ultimate conclusions.