# Trevorton Water Supply Co. *v.* Zerbe Township, Appellant.

*Contracts—Municipal contracts—Township of second class—Water supply—Acts ultra vires—Estoppel—Act of May 25, 1907, P. L. 231.*

1. Townships of the second class are not properly to be regarded as municipal corporations, nor do they possess the implied powers of such corporations. They are only involuntary quasi corporations standing low in the scale of corporate existence and they can exercise only such powers as are expressly conferred upon them by statute.

2. One who contracts with the representatives of a municipality, especially with those having the very limited powers of a quasi corporation such as a township, is bound to know the limitations of the powers of those officials in executing the contract.

3. In an action brought by a water supply company against a township of the second class to recover for the rental of water hydrants, installed under a contract entered into between the water company and the supervisors of the township, in pursuance of the Act of May 25, 1907, P. L. 231, providing that, upon the petition of the owners of a majority of the lineal feet frontage along a highway, the supervisors may contract with water companies for the placing of hydrants along said highway, evidence to show that the petition for the installation of the hydrants was not signed by a majority of the owners abutting upon the highway was erroneously excluded as immaterial, and the trial judge erred in directing a verdict for plaintiff.

4. In such case the supervisors had no authority to provide water supply for fire protection, except upon the terms and conditions set forth in the statute; the plaintiff was bound to know and recognize the limitations upon the powers of the supervisors and could not invoke the principle of estoppel after the work had been done so as to charge the township with liability therefor, where it appeared that the township as an organic unit received no benefit from the work, but certain individuals only, were benefited.

5. It seems that, in such case, if the suit had been brought against the abutting owners who received the benefits, they would be estopped from asserting the invalidity of the contract, it having been performed in so far as they were concerned.

Mr. Justice FRAZER dissents.

Argued May 7, 1917. Appeal, No. 40, January Term, 1917, by defendant, from judgment of C. P. Northumberland Co., May Term, 1913, No. 499, on verdict for plaintiff in case of Trevorton Water Supply Company v. The Township of Zerbe. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Reversed.

Assumpsit for water furnished for fire protection. Before CUMMINGS, P. J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $1,785.60 and judgment thereon. Defendant appealed.

*Errors assigned,* inter alia, were various portions of the charge.

*W. H. M. Oram* and *Albert Lloyd,* for appellant.—The supervisors of a second class township cannot bind a township by a contract which the law gives them no authority to enter into: Hague v. City of Philadelphia, 48 Pa. 527; Scranton v. Jermyn, 156 Pa. 107; Reilly v. Philadelphia, 60 Pa. 467; Pittsburgh v. Walter, 69 Pa. 365; Wimer v. Overseers of the Poor of Worth Township, 104 Pa. 317; Millerstown Borough v. Frederick, 114 Pa. 435; Filson's Trustees v. Himes, 5 Pa. 452; Rice v. Lake Twp., 40 Pa. Superior Ct. 337; Gibson v. Plum Creek Poor District, 122 Pa. 557; Good Roads Machinery Co. v. Old Lycoming Township, 25 Pa. Superior Ct. 156; Roundsley v. Tuscarora Township School District, 47 Pa. Superior Ct. 623.

*A. G. Shoener* and *George B. Reimensnyder,* for appellee, cited: Weitz v. Banfield, 226 Pa. 241; Moore v. Mayor, Aldermen & Commonalty of the City of New York, 73 N. Y. 238; Alexander v. Zerbe Twp. Poor District, 63 Pa. Superior Ct. 356; Somerset Borough v. Sweitzer, 54 Pa. Superior Ct. 283; Allegheny City v. McClurkan & Co., 14 Pa. 81; Fidelity Trust & Safe Deposit Co. v. West Penn & Shenango Connecting R. R. Co. et al., 138 Pa. 494.

Opinion by Mr. Justice Potter, June 30, 1917:

The Act of May 25, 1907, P. L. 231, Section 1, provides "that the road supervisors of any township of the second class in this Commonwealth are hereby authorized and empowered, on the petition of the owners of a majority of the lineal feet frontage along any highway, or portion thereof, in any village within said township, to enter into contract with water companies for the placing of fire hydrants along said highway, for the protection of property from fire.

"Section 2. The supervisors shall levy, for the maintenance of fire hydrants and the purchase of hose, et cetera, an annual tax upon the property abutting upon said highway, and in the district benefited thereby, based upon the assessment for county purposes. Such tax shall become a lien against such property, and shall be collected in the same manner as other taxes. The collector to receive the same commission as on the road-tax."

In presumed compliance with the terms of this act, a petition was presented to the supervisors of Zerbe Township, Northumberland County, asking them to enter into a contract for the supply of water for fire protection to properties along three streets in the village of Trevorton, on condition that "this petition shall first bear the signatures of the owners of a majority of the lineal feet frontage along every highway herein mentioned, as is required by law," and with the further stipulation that "in the event that this petition shall bear the signatures of the owners of a majority of the lineal feet frontage along each and every highway or street herein mentioned," a tax shall be levied as provided in the act, otherwise the petition shall be treated as void. Pursuant to the prayer of this petition the supervisors entered into a contract with plaintiff water company for the installation of hydrants, to recover for the rental of which this action was brought. The defense set up was that the petition was not signed by the majority of abutting owners as required by the act of assembly.

There was nothing in the petition to indicate that it was signed by a majority of owners abutting upon the highways in question, and, when the contract on which suit was brought was offered in evidence, objection to it was made for that reason. The objection was overruled, and subsequently evidence was offered by defendant and admitted by the court, which tended to show that the majority of abutting owners did not in fact sign the petition. The trial judge held, nevertheless, that the

question of the sufficiency of the petition was immaterial, and affirmed a point that plaintiff was entitled to recover if it had complied with the terms of its contract, and that the township could not set up the defense of ultra vires. The result of the trial was a verdict for the plaintiff, and, from the judgment entered thereon, defendant has appealed.

It should be remembered that townships are not properly to be regarded as municipal corporations, nor do they possess the implied 'powers of such corporations. They are involuntary quasi corporations, standing low in the scale of corporate existence, and they can exercise only such powers as are expressly conferred upon them by statute. See the opinions in Dempster v. United Traction Co., 205 Pa. 70, and Haverford Township v. Wilfong, 60 Pa. Superior Ct. 214, applying this principle to townships of the first class. In the present case the statute gave no power to the township to contract in its own name, and for the benefit of the township as a whole, for a supply of water for fire protection. It merely authorized the supervisors, upon the petition of the owners of a majority of the lineal feet of frontage along a highway, to enter into a contract for water supply for the protection of the abutting property, and it provided that the cost of such protection should be paid by a tax upon the property thus benefited. The township as a whole had nothing to do with the transaction, and received no benefit therefrom. The supervisors were by the statute made merely the representatives of the abutting property owners, and the latter were the parties who received the benefit. If, as appears to be the case, the petition was invalid because it was not signed by a majority of the abutting property owners, so that no tax could be legally levied upon the abutting property, and, if this suit had been brought against the abutting owners who received the benefits, it may very well be that they would be estopped from asserting the invalidity of the con-

tract, it having been performed in so far as they were concerned. But this principle of estoppel cannot justly be applied against the township as a whole, which had no authority to make such a contract, and which received no benefits or advantages under it.

The supervisors had no authority to act of their own will, nor on request of any person or persons except the majority of abutting owners. A similar question was raised in Reilly v. Philadelphia, 60 Pa. 467. There an ordinance authorized a contract for paving to be let on condition that the contractor should be chosen by a majority of abutting owners the cost of the work to be borne by the abutting owners. It was said by Mr. Justice WILLIAMS (p. 469) : "It is clear that, under the provisions of the ordinance authorizing the paving of Cumberland street, the equitable plaintiff had no authority to pave the street unless a majority of the lot owners, representing at least one-half of the feet front to be paved, selected him, and the department of highways contracted with him to do the work. His selection by a majority of the lot owners and his employment by the department of highways were essential requisites in order to give him authority to do the work, and the right to collect the cost thereof from the owners of property in front of whose premises it was done. If he was not selected by the lot owners, and if he did not contract with the department of highways to do the paving, he was a mere volunteer, and is not entitled to recover from the city or the lot holders the cost of the paving.......The department had no authority to enter into a contract with him unless he was selected by a majority of the lot owners; and he had constructive, if not actual, notice of this on the face of the resolution authorizing the paving of the street, and the making of a contract for the execution of the work."

In the present case, the supervisors had no authority to provide water supply for fire protection, except on the terms and conditions set forth in the statute. The au-

thority therein conferred permitted them to bind only the property of abutting owners with the cost of the improvement, and no authority whatever was given them to saddle that cost upon the township as a whole. Plaintiff was bound to know and recognize the limitations upon the power of the supervisors, within the principle of the rule stated in Hague v. City of Philadelphia, 48 Pa. 527, where it was said (p. 530): "We say then that these county commissioners, acting under an authority of the most special and limited kind, had no power to change the site, no right to change the plans and specifications, and not a particle of authority to promise payment for extra work, or to ratify its execution. It was the folly of the contractor to rely upon their directions to proceed outside of his contract. He knew the extent of their powers defined in the law and referred to upon the face of his written contract."

In the case at bar the trial judge deliberately closed his eyes to all proof that the petition was not signed by the owners of a majority of the lineal feet frontage along the highways to be protected, holding that this fact made no difference, if the plaintiff company had performed its part of the agreement. In this ruling he plainly erred. He invoked the principle of estoppel as against the wrong party, the township, it not being the party in whose behalf the contract was made, and not having received any benefits therefrom. Had there been any attempt to make such a contract as this on behalf of the township as a whole, it would have been void for want of power upon the part of the township to enter into any such agreement. As has already been pointed out, the authority given to the supervisors permitted them to enter into a contract only upon the petition of a majority of the abutting owners upon the streets specified, and to levy a tax upon the abutting property to cover the cost of the protection thus afforded. We repeat, the township as such, as an organic unity, had nothing whatever to do with the transaction, and it

would be rank injustice to hold the township, as a whole, liable under a contract made by the supervisors for the specific benefit of a portion only of the people living in the township. It would impose the cost of fire protection for those individuals upon the general taxpayers of the township, without any authority of law, and without benefit to the township as a whole. To make such application of the doctrine of estoppel against municipal organizations, as did the court below, would be to open the door to all manner of fraud upon the part of public officials, and would enable them to bind municipalities by contracts made in utter disregard of the requirements of the law. It would permit the rights and liabilities of municipalities to be determined by the principle of estoppel rather than by the statutes passed for the purpose by the legislature. Such a result will be avoided by enforcing the safe and wholesome rule that one who contracts with the representatives of a municipality, especially with those having the very limited powers of a quasi corporation such as a township, is bound to know the limitations of the power of those officials in executing the contract.

The fourth, fifth, sixth, eighth, fourteenth, fifteenth, sixteenth, and seventeenth assignments of error are sustained, and the judgment is reversed, with a venire facias de novo.

Mr. Justice FRAZER dissents.