## Commonwealth v. Pugh et al.

*Russell J. Brownback,* township solicitor, and *Arthur W. Bean,* assistant district attorney, for Commonwealth.

*Desmond J. McTighe,* of *Fox & McTighe,* for defendants.

KNIGHT, P. J., July 18, 1940.—Defendants were convicted before a justice of the peace for the violation of an ordinance of the Township of West Norriton, a township of the first class. We allowed an appeal to this court.

The ordinance setting forth the offense complained of is: "An ordinance regulating the dumping or placing of waste, rubbish or junk on public or private property in West Norriton Township and providing penalties for the violation thereof.

"Whereas, the unregulated dumping or placing of waste, rubbish and junk in West Norriton Township is deleterious to the health, safety and general welfare of the residents thereof, Be it Ordained and Enacted by the Commissioners of West Norriton Township in meeting assembled, and it is ordained and enacted by authority of the same,

"Section 1. No paper, trash, rubbish, ashes, junk, waste or discarded materials of any kind, shall be thrown, deposited or dumped in any ravine, ditch or gutter, or on any highway, road, street, avenue, public lane, public alley, sidewalk or foothpath in West Norriton Township, nor on any public place or private property, vacant or occupied, within the limits of said Township,

"Provided nothing in this ordinance shall be construed to prohibit municipal dumps maintained by West Norriton Township.

"Provided further that nothing in this ordinance shall be construed to prohibit any person, partnership, association or corporation from engaging in the junk business or in the business of dismantling or disassembling automobiles, Provided said junk and said automobiles are entirely dismantled and disassembled and all of the parts therefrom are removed from the premises, or stored in some building suitable for that purpose, within a period of two weeks from the time said junk or automobiles are placed upon the premises."

Section 2 is a penalty provision.

It is admitted that defendants violated the ordinance in that they did not comply with the proviso last quoted.

Defendants operate what is commonly known as an automobile "graveyard". They buy wrecked and old cars, take them to their garage adjoining the "graveyard", where they remove the tires, batteries, and other accessories in good condition; the cars are then towed to the field or "graveyard", where they are placed in rows. The machines are then dismantled and the parts sold. This dismantling is not done at once, but from time to time, as various parts are called for. The parts unsold are stored in a building on the premises. Defendants are not in the junk business, as that business is usually understood to be; they do not buy and sell scrap metal, and, while some parts of the machines they buy and dismantle certainly could be termed "junk", this fact does not make their business a "junk business" within the commonly-accepted meaning of the words.

Defendants declare that it would be impossible for them to comply with the terms of the ordinance in reference to the dismembering of cars, and that if the law is constitutional, and enforced, it will put them out of business. Defendants only attack the proviso of the ordinance

requiring them to dismantle the cars entirely, and place all the parts in a suitable building within two weeks.

Had the Commissioners of West Norriton Township the power to enact such a proviso; and, if so, is it constitutional as applied to defendants' business?

It should be remembered that townships are not properly to be regarded as municipal corporations, nor do they possess the implied powers of such corporations. They are involuntary quasi-corporations, standing low in the scale of corporate existence, and they can exercise only such powers as are expressly conferred upon them by statute: Dempster v. United Traction Co., 205 Pa. 70 (1903), and Haverford Twp. v. Wilfong, 60 Pa. Superior Ct. 214 (1915). See, also, as to second class townships, Trevorton Water Supply Co. v. Zerbe Twp., 259 Pa. 31 (1917).

The First Class Township Law of June 24, 1931, P. L. 1206, art. XV, sec. 1502, cl. XXVI, vests in the board of township commissioners the power "To make regulations respecting pigpens, slaughterhouses, manure pits, drains, dumps, cesspools, and similar conditions, and to prohibit and remove any noxious or offensive manufacture, art or business, or dangerous structure, or weeds, or any other nuisance whatsoever, on public or private grounds, prejudicial to the public health or safety, or to require the removal of the same by the owner or occupier of such grounds . . .". There is nothing in the above-quoted portion of The First Class Township Law which covers the case before us.

It is apparent, from a careful reading of the act, that the legislature intended to vest in the board of township commissioners the power to make regulations, respecting certain obviously unhealthy conditions, such as pigpens, slaughterhouses, and the like; and this is as it should be, for it is common knowledge that, if such conditions are left unregulated, they would become breeding places for flies, mosquitoes, and other disease-carrying insects. An automobile "graveyard", however, is not inherently un-

healthful, and is, therefore, not to be placed in the same class with pigpens, slaughterhouses, manure pits, etc.

The ordinance in question, however, does not attempt to prohibit the business of dismantling or disassembling automobiles, but attempts to regulate such a business. This is not within the express powers of townships of the first class, nor necessarily implied therefrom: Haverford Twp. v. Wilfong, supra. Furthermore, neither the title nor the preamble of the ordinance gives any notice that automobile "graveyards" are within its purview.

Defendants further contend that the ordinance contravenes both the Federal Constitution and the State Constitution, in that it deprives them of their liberty and property without due process of law; denies to them the equal protection of the laws; is unreasonable, arbitrary, and discriminatory; and is an arbitrary attempt to impose business regulations for purely aesthetic reasons.

The commissioners have no powers but what are expressly granted them, and such implied powers as are necessary to the proper performance of their duties under their expressly-granted powers and the accomplishment of the objects for which they are conferred. To sustain the exercise of any power by first class townships, some legislative authority must be shown.

" 'The old government of townships continues as to townships of the first class, changed only in respect to certain express powers conferred upon the township commissioners, and among these powers we do not find any power to legislate generally with respect to the police power' ": Haverford Twp. v. Wilfong, supra, p. 219.

We are of the opinion that the proviso, in reference to the time limit for dismantling automobiles and the storage of all parts thereof in a building, was beyond the express or implied powers of the commissioners to enact.

What we have said disposes of the case, but we may discuss briefly the constitutional angle of the question before us. A law which regulates or prohibits a lawful or legitimate business must have some definite relation

to the public health or safety. The township sought to show that defendants' "graveyard": (1) is a fire hazard; (2) is a breeding place for rats; (3) produces large swarms of flies and mosquitoes.

Much testimony was produced, but we are not satisfied that the "graveyard" has been convicted on any count of the indictment. The cars are stored in a field, and it is common knowledge that the modern machine is mostly metal. We have never heard of a fire in an automobile "graveyard", nor does the testimony disclose that there has ever been a fire in the defendants' yard.

There was much testimony in reference to rats, but the witnesses could not say with certainty that all of the rats they told about came from the "graveyard". No doubt rats do breed among the wrecked cars, but there is nothing about an automobile for a rat to eat, and without food we fail to see how the "graveyard" could sustain a large population of rats.

The same is true of the flies and mosquitoes. There is nothing about a "graveyard" to attract these pests. The evidence of the Commonwealth fell far short of establishing defendants' yard as a nuisance in fact. The regulation of the proviso, therefore, has slight if any relation to the public health, safety, or morals.

That automobile graveyards are eyesores on the landscape is only too true. They offend the aesthetic taste of the least artistic among us. They are undesirable neighbors and unwanted enterprises in any community. It is, however, a legitimate business, and even if the commissioners had the power to regulate them, the regulation must be reasonable. The regulation of the proviso is unreasonable, and plainly designed to put the "graveyard" out of business.

While we sympathize with the purpose, we are compelled to hold that the commissioners had no power to enact such an ordinance as applied to the automobile "graveyard", and that the regulation as to the dismantling of cars and the storage of all parts thereof in a suit-

104

able building within two weeks is unreasonable, unconstitutional, and void.

And now, July 18, 1940, defendants are found not guilty. The costs are to be paid by the county.