**ROLLER, Plaintiff-Appellant, v. STOECKLEIN et, Defendant-Appellees.**

Common Pleas Court, Montgomery County.

No. 111064.   Decided April 24, 1957.

454

Lloyd H. O'Hara, for plaintiff-appellant.
Francis S. McDaniel, for defendant-appellees.

## OPINION

By McBRIDE, J.:

This case was submitted to the court on the appeal of law and fact of a police officer from the finding of the Civil Service Commission of the City of Oakwood sustaining the removal of the officer for insubordination pursuant to §143.27 **R. C.**, as amended August 16, 1955. The transcript of the testimony before the Civil Service Commission was introduced on the appeal and the testimony at the hearing was limited to that of a local engineer who testified that the area in question was exclusively on a dedicated public way and not on private property, nor separate property owned by the City of Oakwood.

The incident arose after the chief of police issued a departmental order prohibiting employees in the safety department from parking their private cars, during duty hours, in several spaces on a public street reserved by custom or policy, and not by law, for the adjoining businessmen. There is a direct conflict in the record as to whether the officer was apprised of the existence of this departmental order, however for the purposes of this decision the court will assume, without deciding, that such notice was reasonably given on the morning in question. In any event the officer became aware of its existence before he was removed by the city manager the same afternoon.

The counsel for the City of Oakwood argues that regulation of the parking of employee's automobiles on public streets by the chief of police is necessary and reasonable because the officers are on duty for a period of twenty-four hours and because parking for such a length of time, even though lawful, would exclude the use by other citizens. This argument is defective in several respects: the subject matter is legislative in character, not within the administrative control of any individual, and the legislative power to control the use of public streets and highways is subject to definite limitations. Neither the chief of police or the legislative authority of the municipality has the power to designate public ways for the exclusive benefit of indvidual citizens or to arbitrarily exercise discrimination against individual citizens, or groups of citizens, by prohibiting their use of such public ways. Regulations respecting the use of public ways must be exercised by a legislative power, cannot be delegated, and must be general in nature and impartial in operation.

An ordinance which prohibits the sale on the city streets and alleys

of ice cream by salesmen who operate refrigerated vending tricycles is null and void and in violation of the constitution. **Frecker v. City of Dayton, 153 Oh St 14; 41 O. O. 109.**

An ordinance which gives the owner abutting a public street the authority to control parking on a public street is invalid because of its attempted delegation of legislative power and for the reason that it is violative of the equal protection of the law guaranties of the state and federal constitutions. **Cincinnati v. Cook, 107 Oh St 223.** In conclusion in that case the court said:

"The effect of this ordinance is to grant a privilege or immunity to one and deny it to another of the same class. Ordinances to be valid must be general in their nature and impartial in their operation, and those which make an act penal if done by one person and not so if committed by another cannot be sustained.

"Discriminaton is not only permitted by the terms of this ordinance but is expressly authorized by the delegation of authority to the owner of the premises, whose ipse dixit determines the guilt or innocence of one who stops his automobile or other vehicle in front of such premises. And not only was discrimination permitted and authorized, but actually resulted, as the record discloses."

Closer to home we find the case of **Dayton v. Hickle (App), 68 Abs 161,** which involved an ordinance granting the exclusive use of taxi stands upon the authorization of the director of public safety and the consent of the abutting owner. The court of appeals of this district held that the case of Cincinnati v. Cook, supra, was determinative. The Cincinnai case has been repeatedly followed in varied situations. **Northern Boiler Co. v. David, 157 Oh St 564, 47 O. O. 416; State v. Baber, Supt., 161 Oh St 211, 53 O .O. 95; Albrecht Grocery Co. v. Overfield, 32 Oh Ap 512.** In the Albrecht case an ordinance expressly gave the police department the right to regulate traffic in certain instances. A similar legislative delegation of power to the police department was viewed as a breach of public trust and declared unconstitutional in Sage v. City of Akron, 30 O. N. P. (N. S.) 72. In a much narrower situation Judge Stewart wrote in the opinion in **Weber v. Board of Health, 148 Oh St 389, 35 O. O. 351,—**

"The line which separates legal and constitutional delegation of power for administrative purposes and the delegation of legislative, discriminatory and unreasonable power is frequently a thin one, obscured in a twilight zone, but, nevertheless, it is the duty of courts to find it and to confine boards, commissions and officers to the exercise of powers which are regulatory and administrative, and to interdict as to them functions which belong exclusively to legislative bodies. It is only thus that we shall continue a government of laws and not of men."

The appellant was subject to the lawful and reasonable orders of his superiors in his conduct as a police officer and in the performance of the governmental function assigned to his department. However the function in this instance was not one assigned to the police department and, if assigned by ordinance, it would have been equally unconstitutional and void. The duties of a chief of police do not include the power to adopt regulations for the use of public streets. Any regulation attempting to

assert such power is void and cannot be enforced against any ctizen, including subordinate police officers. Such an order was also unreasonable and arbitrary because it denied constitutional rights to a few and it conferred special benefits upon others.

The fact that a citizen is employed as a police officer does not constitute a waiver of any privilege granted by the constitution. Any construction or interpretation that directly or indirectly deprives a citizen of constitutional rights because he is a police officer would create incredible and despotic conditions.

The case of **The State, ex rel., Christian v. Barry, Directory of Public Safety, 123 Oh St 458,** determined this very question. On August 6, 1929 the police department of Cleveland issued a departmental order requiring every member of the force to obtain permission before settling any civil suit for damags to the personal automobiles of the officers. Russell Christian was a policeman in the department and on September 17, 1929 he was suspended for violation of this rule. In the opinion Judge Allen indicated that the order "was issued in a wise and certainly most commendable effort to eliminate the coercion of private citizens by police officers in damage cases. It was construed both by the director of public safety and by the civil service commission as forbidding resort to the courts. If this construction is proper, it makes the order unconstitutional, for it places a superior officer as an intermediary between the courts and the citizen, deciding whether or not the court shall receive his suit. This construction deprived Christian of his resort to the courts, and therefore deprived him of a constitutional right guaranteed him by **Section 16 of Article I of the Constitution of Ohio.** He was justified in instituting a suit in the courts without consultation with his superior officer, and hence his dismissal upon that ground was improper."

It may well be argued that it is unbecoming a police officer to refuse to obey any personal order issued by a superior under the color of his office, irrespective of the arbitrary, immoral, or unconstitutional nature of the order. The court cannot recognize such a proposition.

It is reasonable that the superior officer have the means of securing discipline among the members of the department. In the conduct of legitimate police functions normal and emergency situations arise in which it is contrary to law or detrimental to public interest to tolerate a refusal to obey a direct and reasonable order. However it is possible to conceive of difficult situations in which moral and legal considerations prohibit obedience. Should an officer, on orders, inhumanly treat a prisoner for the purpose of obtaining a confession in violation of the prisoner's constitutional rights? If a superior officer has such authority, supported by the right of suspension and removal, what other unlawful and unreasonable acts may be imposed upon a subordinate officer and what other classes of citizens may be similarly denied their fundamental rights? These are serious considerations of public concern which are indirectly involved in this case.

The issue here is beyond the real or apparent authority of the police department. It does not involve any duty or obligation assumed by the officer. The departmental order was legislative and executive in nature and if it be considered here simply as a disciplinary matter the officer

would be denied the full right of recourse to the courts to determine the legality of the order. The chief of police would thereby acquire legislative, executive, and to some extent judicial functions.

Where a simple doubt exists as to the reasonableness or legality of an order of a superior and time is not made of the essence of the order—as it was here—some other method might be selected, if available, for its determination. In the instant case the nature of the situation left no opportunity for any exercise of due process of law other than that adopted by the appellant. His conduct in exercising his constitutional rights was gentlemanly and above reproach. Accordingly the court cannot find that the appellant should have adopted any other course. The civil service laws are designed to protect public employees in this situation.

The removal of a police officer for insubordination because he failed and refused to obey an order of his superior which order violated the constitutional rights of the officer as a citizen is unlawful, arbitrary, and void. The finding of the Civil Service Commission of the City of Oakwood is reversed and the appellant ordered re-instated as of December 7, 1956.

The motion to dismiss the appeal because of insufficient notice is overruled.