Baxter, Appellant, *v.* Philadelphia.

Argued December 2, 1966.   Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Jacob J. Kilimnik,* with him *Alexander Osinoff* and *Samuel Finestone,* for appellants.

*Levy Anderson,* First Deputy City Solicitor, with him *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellees.

OPINION BY MR. JUSTICE ROBERTS, June 29, 1967:

This is an appeal from the judgment of the Court of Common Pleas No. 2 of Philadelphia County entered March 14, 1966 dismissing exceptions of plaintiffs and entering judgment for defendants on the verdict in an action of mandamus. Plaintiffs are certain policemen, crime investigation officers and retired policemen on their own behalf and on behalf of all police and park police similarly situated. Defendants are the City of Philadelphia, the mayor and other city officials. The action from which this appeal arises was instituted in 1955 to compel the city to pay plaintiffs at overtime rates for working more than a five-day, 40-hour work week since January 7, 1952 and to restore a five-day, 40-hour work week for all city policemen and park police.[1]

Prior to October 29, 1951 Philadelphia police were on a six-day, 48-hour work week schedule. On that day an ordinance was adopted, effective January 1, 1952, establishing a five-day work week for city employees, and authorizing the mayor to execute an agreement with the American Federation of State, County

---

[1] In a previous appeal in this case, *Baxter v. Philadelphia,* 385 Pa. 424, 123 A. 2d 634 (1956), this Court sustained the judgment of the court below denying plaintiffs' motion for judgment on the pleadings.

and Municipal Employees, District Council No. 33. The agreement authorized provided that the regular work week for the union's employees should consist of a five-day, 40-hour work week, that overtime beyond eight hours in any day or beyond five days any week should be paid for at the rate of time and one-half and that work performed on Sunday should be paid for at double time. On January 2, 1952, the ordinance of October 29, 1951 was amended to provide that on and after January 1, 1952 the standard work week of all city employees, including police, be in accordance with the 40-hour plan described above. Thus, effective January 1, 1952, police and park police of the city were placed on a work week schedule of 40 hours.

On January 7, 1952, Philadelphia's Home Rule Charter, which had been adopted by the electorate in the spring of 1951, came into effect and a new city administration was inducted into office. On that same day, the new Civil Service Commission, appointed under the charter, promulgated Supplemental Emergency Civil Service Regulation A. This regulation provided that effective January 7, 1952 the hours of work, the rates of pay and determination of compensation of all city employees should be as legally established on October 26, 1951. Thus, following adoption of this regulation, policemen and park police were, in fact, returned to a six-day, 48-hour work week. Finally, it must be noted that effective January 1, 1953 the Civil Service Commission adopted another regulation which continued in effect the six-day, 48-hour week for police and park police.[2]

The instant action was instituted by plaintiffs to compel a restoration of the 40-hour week and to ob-

---

[2] Following appropriations therefor by City Council, the regular work week of Philadelphia's police was reduced in 1957 to 44 hours and in 1960 to 42 hours.

244

tain payment pursuant to the provisions of the ordinance of January 2, 1952 for hours worked by plaintiffs in excess of 40 per week between January 7, 1952 and the present time.[3]  In support of their claim plaintiffs urged in the court below and in their appeal that the regulations returning police to a six-day, 48-hour week were invalid: (1) because they were not adopted in compliance with the procedural requirements of the charter; (2) because they constituted an ineffective attempt to repeal the ordinances of October 29, 1951 and January 2, 1952; (3) because they violate Pa. Const. Art. III, §7 by granting special privileges to city employees (i.e., unionized employees of the former Public Works Department granted a 40-hour week under the ordinance of October 29, 1951 and an agreement between the city and their union) other than police; (4) because they violate the equal protection and due process guarantees of the Constitution of the United States; (5) because they violate constitutional guarantees of the obligation of contracts.

In findings of fact affirmed by the court en banc, the trial judge concluded that Supplemental Emergency Civil Service Regulation A and the subsequent regulation of January 1, 1953 validly superseded the ordinances of October 29, 1951 and January 2, 1952 and that there was no appropriation by City Council in the 1952 budget which "was intended by Council to be, or which in fact became, available for the payment of overtime work of plaintiffs or those in the same class as plaintiffs." The court en banc, in its opinion affirming the findings of fact of the trial judge, went on to conclude in its opinion that appellant's constitutional claims were completely devoid of merit.

---

[3] The total amount which would be required to compensate plaintiffs in accordance with the ordinance of January 2, 1952 is over $50,000,000.

On this appeal, in addition to reasserting claims mentioned above, plaintiffs complain that the court below erred in: (1) admitting certain evidence tending to show the procedural validity of the adoption of the civil service regulations; (2) admitting the testimony of the Deputy Finance Director and Personnel Director as to the additional funds it would cost the city if police were put on a 40-hour, rather than a 48-hour week; (3) admitting evidence of the mayor's budget requests for the purpose of showing that the lump sum appropriations by council were not intended to cover the additional cost of reducing hours of work for police; (4) limiting plaintiffs' counsel to thirty minutes of oral argument plus five minutes of rebuttal before the court en banc.

At the outset it should be noted that plaintiffs' assertion that the civil service regulations here involved constituted an invalid attempt to repeal prior ordinances of City Council is groundless. In *Ebald v. Philadelphia,* 7 Pa. D. & C. 2d 179 (C.P. Phila. 1956), aff'd per curiam on the opinion of the court below, 387 Pa. 407, 128 A. 2d 352 (1957), it was recognized that the Philadelphia Home Rule Charter vests in the administration sole responsibility for prescribing civil service regulations, even to the extent of superseding inconsistent statutes of the General Assembly. Indeed, in *Ebald* the court observed: "Since it is evident that the framers of the Home Rule Charter intended matters affecting personnel administration to be governed exclusively by civil service regulations, a supporting ordinance of city council not only becomes unnecessary but would be invalid as in derogation of the powers vested by the charter in the Personnel Director and the Civil Service Commission. . . ." (Citation omitted.) 7 Pa. D. & C. 2d at 183-84.[4]

---

[4] Cf. *O'Donnell v. Philadelphia,* 385 Pa. 189, 192, 122 A. 2d 690, 691 (1956) ; *American Fed'n of State, County & Municipal Em-*

It should also be noted at the outset that plaintiffs are incorrect in their belief that the city had the burden of proving the validity of the civil service regulations. This view plaintiffs base on the contention that the regulations constituted an implied repealer of the ordinances of October 29, 1951 and January 2, 1952 and the doctrine that implied repeals are an affirmative defense. Because of our view that the Charter explicitly took from City Council the power to legislate with regard to the civil service matters covered by the regulations here in question, we do not consider that the regulations may be properly characterized as an implied repealer. Hence, we believe the normal presumption of validity attached to the regulations[5] and that plaintiffs therefore had the burden of showing their invalidity.

Plaintiffs' claim that Supplemental Emergency Civil Service Regulation A of January 7, 1952 and the regulation of January 1, 1953 were not adopted in compliance with the procedural requirements of the Charter is based on the following alleged defects: (1) the regulations were not approved by the Administrative Board as required by §7-400 of the charter; (2) there was no emergency "affecting the public health or safety" within the meaning of §8-407 of the charter justifying the action of the mayor in making the regulations immediately effective instead of deferring their effectiveness for the thirty day period required by §8-407; (3) that the regulations were void for failure adequately to advertise them. We consider first plaintiffs' attacks on the procedural regularity of the regu-

---

ployees, Dist. Council No. 33 v. Philadelphia, 83 Pa. D. & C. 537 (C.P. Phila. 1952).

[5] E.g., Review Committee, Venue VII v. Willey, 275 F. 2d 264, 272 (8th Cir.), cert. denied, 363 U.S. 827, 80 S. Ct. 1597 (1960); People ex rel. Colletti v. Pate, 31 Ill. 2d 354, 201 N.E. 2d 390, 393 (1964).

lation of January 7, 1952 since, if that regulation were valid, the validity of the later regulation, which imposed the same hours of work, is immaterial to the outcome of this litigation, because the earlier regulation would merely have remained in effect.[6]

Plaintiffs' contention that the regulation of January 7, 1952 was not approved by the Administrative Board rests solely on the ground that the city did not present the best evidence of the approval. From the record it appears that the city called as a witness the present Secretary of the Administrative Board. In the custody of the secretary was the official minute book of the board. The secretary testified to the approval of the regulation from the contents of the minute book. On cross-examination plaintiffs' attorney elicited from the secretary the information that all the minutes in the book including the approval of the regulation were in mimeographed form. Because of their mimeographed form, plaintiffs' attorney urges, in effect, that there must have been "an original" and that failure of the city to produce this original or to satisfactorily explain nonproduction made the proffered document inadmissible.

---

[6] In this litigation plaintiffs have earnestly attacked the validity of two other regulations promulgated by the Civil Service Commission at the beginning of 1952. These regulations are known as Regulation XIX and Regulation XXVII, §2. It is completely unnecessary for us to consider either of these attacks. Regulation XIX merely directs the Personnel Director to perform duties prescribed by Article VII of the Philadelphia Home Rule Charter. Hence, whether or not Regulation XIX is valid, the Personnel Director had a valid basis in law for the performance of the duties imposed by the regulation. Regulation XXVII, §2, which purported to place in effect the work and pay plan established by the ordinance of January 2, 1952 and which was specifically superseded by Supplemental Emergency Civil Service Regulation A, is totally irrelevant to the injury complained of by the plaintiffs in this litigation and hence the validity of Regulation XXVII, §2 need not be considered by us.

There are two answers to plaintiffs' assertion with respect to the best evidence rule. The first is that the mere fact that mimeographs are made from a stencil does not indicate whether that stencil or a previous draft (if it existed at all) were approved by the Administrative Board as the minutes. It is just as likely that the minutes only became official in their mimeographed form. In other words, the fact that the contents of the official minute book are in mimeographed form fails to indicate with any certainty that better evidence, i.e., "an original" exists. This Court has maintained for well over a century that the failure of a document to indicate the existence of better evidence prevents that document's exclusion from a judicial proceeding under the best evidence rule. *Western Union Tel. Co. v. Stevenson*, 128 Pa. 442, 454, 18 Atl. 441, 442 (1889); *Cutbush v. Gilbert*, 4 S. & R. 551, 555 (Pa. 1818). The second answer to plaintiffs' argument is that our law specifically makes admissible the official minutes of a political subdivision of the Commonwealth, when as here, they are presented to the court by their official custodian, *Roland v. Reading School Dist.*, 161 Pa. 102, 28 Atl. 995 (1894); see Act of September 26, 1951, P. L. 1458, §1, as amended, Act of May 15, 1963, P. L. 35, §1, 28 P.S. §141 (Supp. 1967).

The emergency "affecting the public health or safety" upon which Mayor Clark relied in declaring the regulation of January 7, 1952 effective immediately resulted,[7] in the city's view, from the failure of council to appropriate the funds required to maintain under

---

[7] In their brief on appeal, plaintiffs complain that the court below erred in permitting the city to introduce into evidence a photostatic copy rather than the original of the mayor's declaration of the emergency. This claim is foreclosed by plaintiffs' specific and explicit waiver of this objection in the court below. Record at 481a.

the 40-hour work week plan the level of police coverage existing prior to January 1, 1952. This was because the outgoing City Council, which had put into effect the 40-hour plan by the ordinances of October 29, 1951 and January 2, 1952, had failed to appropriate for the ensuing fiscal year sufficient funds to maintain the level of police coverage.[8] Thus the city contends the mayor was justified in declaring the emergency because of the sudden twenty percent drop in coverage that a reduction from a 48 to a 40-hour work week, without additional appropriations, would have entailed.

Plaintiffs' reply to the city's justification of the declaration of the emergency rests essentially on the testimony of Mr. Samuel Rosenberg and of certain policemen. In his capacity as Director of Public Safety, Mr. Rosenberg had supervision over the Philadelphia police for the four years ending January 7, 1952. Mr. Rosenberg testified, and it was stipulated by opposing counsel that certain policemen would testify to the same effect, that during the one week beginning January 1, 1952, when the police work week was in fact reduced from 48 to 40 hours, no problems were experienced and no emergency affecting the public health

---

[8] During the course of this litigation plaintiffs have strenuously asserted that the funds appropriated by City Council were sufficient to cover the cost of the reduction of the police work week from the 48 to the 40-hour plan. All but one of the plaintiffs' arguments in this respect were explicitly rejected by this Court in *O'Donnell v. Philadelphia*, 385 Pa. 189, 193-95, 122 A. 2d 690, 692-93 (1956), a case involving virtually the precise question involved in the instant litigation. Plaintiffs' one argument not covered by *O'Donnell* that the funds were available in unexpended appropriations for personal services in the police department is refuted by the simple arithmetical fact that in no year mentioned did the unexpended funds even approach 50% of the difference between what would have been required by the 40-hour work plan and the amount expended under the existing pay plan.

or safety arose. Plaintiffs seek to draw from this testimony and from the absence in the record of testimony on behalf of the city from any police source a conclusive refutation of the city's position. Indeed, plaintiffs assert that the court below was required to accept the conclusion of their witnesses because the city's testimony from the Personnel Director and Deputy Finance Director to the effect that the reduction in work would have reduced coverage was incompetent because not from witnesses qualified to express an opinion on matters involving police administration.

In considering the plaintiffs' argument with respect to the declaration of an emergency we have been guided by certain principles. To begin with we believe that §8-407 of the Charter, by vesting the mayor with the power to declare an emergency, imposes a heavy burden on any party who wishes to attack the validity of this declaration. We also believe the validity of the declaration should be controlled by the situation as it reasonably appeared to the mayor on January 7, 1952, rather than as it presently appears with all the advantages which hindsight may provide. Similarly, we believe that reliance by the mayor on the appraisal of the situation by financial and personnel experts was prefectly reasonable and hence we reject plaintiffs' claim that their testimony at trial should have been excluded as incompetent. After all, the mayor might reasonably have declined to rely solely on the view of the police themselves, given the extent of their material interest in the matter. Finally, it must be borne in mind that the trial judge, affirmed by the court en banc below, chose to accept the city's rather than the plaintiffs' contention with regard to the emergency. Such a finding, insofar as it involves a question of fact, has the effect of a jury's verdict and will not be disturbed on appeal if based on sufficient evidence, e.g., *Schofield v. Crossman,* 420 Pa. 196, 216 A. 2d 455 (1966).

Against the background of these principles, we think that there can be little doubt of the propriety of the declaration of the emergency. As the able brief of the city states, it is a matter of simple arithmetic that the shift from a 48 to a 40-hour week without a corresponding appropriation would have reduced the number of police manpower hours by twenty percent. This, in turn, we believe, the new administration could, in the circumstances, reasonably have concluded would result in a reduction of police coverage of corresponding magnitude. It takes little imagination to suggest that in a metropolis like Philadelphia such a sudden reduction in coverage posed dangers to the public safety. And the testimony of police, even if believed, that no problems were experienced during the single week at the beginning of 1952 when the police work week was reduced from 48 to 40 hours does not refute this suggestion. For since part of the value of police coverage lies in deterrence, it may well be that, although the initial reduction failed to have an immediate adverse effect on public safety, a reduction persisted in for weeks or months might have become apparent to criminal elements and hence invited a dangerous increase in their activity.

Plaintiffs' contention that the regulation of January 7, 1952 was invalid because inadequately advertised need not detain us long. Section 8-407(b) of the charter requires only that: "The Department of Records shall give public notice of such filing by advertising in the three daily newspapers of the City having the largest paid circulation the fact that regulations relating to a particular subject have been filed with it, and that any person affected thereby may request a hearing;".

The advertisement inserted by the city in the three daily newspapers of Philadelphia having the largest paid circulation was as follows: "Notice is hereby

given, pursuant to Section 8-407(b) of the Philadelphia Home Rule Charter adopted by the Electors April 17, 1951, that on January 7, 1952, Philadelphia Emergency Civil Service Regulations and Supplements A, B, C and D were filed with the Department of Records, Room 184, City Hall, where they will be available for public inspection for thirty days. Any person affected thereby may request a hearing by presenting to the Department of Records a written request therefor. By reason of the emergency affecting the public health and safety, these Emergency Regulations and Supplements thereto became effective January 7, 1952, by Order of the Mayor, Joseph S. Clark, Jr."

We believe this advertisement was adequate to put public employees on inquiry that matters affecting their conditions of employment had been touched upon by the regulations. Plaintiffs fail to cite any authority which suggests that more was required. Moreover, it is difficult to believe that Philadelphia police were not aware of the effect of the regulation of January 7, 1952 since the work week of all was immediately affected.

The lack of merit in plaintiffs' attack on the regulation of January 7, 1952 under equal protection and due process guarantees is suggested by the fact that their only citation of authority is extremely general language from a case involving an inter-racial cohabitation statute.[9] Essentially plaintiffs' position is that the regulation requiring uniformed employees, including police, to work longer than certain other employees was prima facie discriminatory and that the city failed to meet its burden of presenting a justification for the differences imposed. Plaintiffs are, of course, incorrect as to the locus of the burden; as pointed out above,[10] administrative regulations are presumed valid

---

[9] *McLaughlin v. Florida*, 379 U.S. 184, 85 S. Ct. 283 (1964).

[10] See note 5 supra and accompanying text.

and the burden is upon the party who maintains otherwise. Moreover, we are convinced that the peculiar sensitivity of the public interests protected by police, especially in the circumstances present in the instant case, justify such differences as existed between treatment by the city of its police and other employees.[11] Indeed, we should be very reluctant to invalidate any measures through which government varies the wages and working conditions of public employees according to the functions they perform. Government must have broad discretion in adjusting incentives for public employment if it is to compete successfully in the labor market to provide adequately and economically services essential to the public weal. It is not difficult to envision the disruption and disservice which would result to the public welfare if the courts were to substitute their relatively uninformed judgment for the sophisticated expertise required in this area.

The reasons which defeat plaintiffs' claim under equal protection and due process guarantees serve equally to refute their claim under Article III, §7 of the Constitution of Pennsylvania.[12] *Schultz v. Philadelphia*, 385 Pa. 79, 122 A. 2d 279 (1956), relied upon by plaintiffs, as well as *Clark v. Meade,* 377 Pa. 150, 104 A. 2d 465 (1954), present situations distinguishable from the instant case. The legislation and Charter amendments struck down under Pa. Const. Art. III, §7 in *Schultz* and *Clark* sought to exempt the office and clerical personnel of some, but not all, former county offices from civil service requirements. It is apparent that the difference in function between office and clerical personnel of one office and another is far less

---

[11] Cf. *Iben v. Monaca Borough*, 158 Pa. Superior Ct. 46, 43 A. 2d 425 (1945) which suggests that differences between the terms of employment of uniformed and other employees is not constitutionally invalid discrimination.

[12] See also *Iben v. Monaca Borough*, note 11 supra.

254

significant than that between police and other municipal employees and thus that *Schultz* and *Clark* do not control the instant situation.

Plaintiffs' last constitutional claim is that the regulations requiring them to return to the 48-hour work week were an impairment of contractual rights and deprived them of vested rights. The authorities reviewed in *Kelly v. Jones,* 419 Pa. 305, 214 A. 2d 345 (1965) completely dispose of this contention.

Finally we consider plaintiffs' claim that they were unfairly limited to thirty minutes of oral argument and five minutes of rebuttal argument before the court below. A matter such as the length of argument is, of course, almost entirely within the discretion of trial courts, see *Commonwealth v. Buccieri,* 153 Pa. 535, 551, 26 Atl. 228, 234 (1893). Moreover, where, as here, no jury was present and plaintiffs' counsel could have presented to the court by way of briefs any contentions he was unable to develop fully in oral argument, we believe that plaintiffs were not prejudiced by the limitation of time on their oral argument.

Judgment affirmed.

Mr. Justice Cohen took no part in the consideration or decision of this case.