Brenckle, et al. *v.* Shaler Township.

Argued September 8, 1971, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Manderino, Mencer and Rogers.

350

*Ronald P. Koerner,* with him *Gatz, Cohen and O'Brien,* for appellants.

*Ralph H. German,* Shaler Township Solicitor, for appellee.

OPINION BY JUDGE WILKINSON, October 13, 1971:

This is an action in Equity to enjoin the enforcement of a Resolution of the defendant, a first-class township, which prohibited outside employment of police officers other than on their "days off, holidays, or vacations". The plaintiffs were 21 full-time police officers who asked the court to grant a preliminary injunction as well as a permanent injunction. The court initially granted the preliminary injunction but after full hearing, filed an adjudication and decree nisi sustaining the Resolution and dismissing the complaint and injunction. This was affirmed by the court en banc. This appeal followed.

It seems appropriate to observe here that the court below afforded the plaintiffs every protection while they pursued what they conceived to be their legal rights. The Resolution was adopted on April 17, 1970, to take effect May 1, 1970. The complaint was filed on May 1, 1970, and Judge BOLTE granted a preliminary injunction. When he dismissed the complaint and injunction, he modified the effective date of the Resolution to be October 1, 1970. Thereafter, when the court

en banc affirmed that decision and entered a final decree on October 21, 1970, it made the Resolution effective immediately. Nevertheless, on November 5, 1970, when this appeal was filed, Judge BOLTE granted a supersedeas and delayed the enforcement of the Resolution with respect to those police officers who had employment at the beginning of the suit until the case was disposed of by this Court.

We must affirm the decision of the court below, sustaining the validity of the Resolution and dismissing the complaint and application for injunction.

This is a case of first impression in Pennsylvania, but there are cases squarely on point in many jurisdictions which sustain the Resolution. These cases are collected and discussed in an annotation entitled "Public Employe—Outside Occupation", appearing in 88 A.L.R. 2d 1235 (1963). Section 3 of the Annotation is devoted to police officers. The lower court has analyzed these cases in its opinion and no good purpose would be served by repeating the analysis here. Suffice it to say that cases from New Jersey, New York, Illinois, Iowa, Oregon, and Texas all have approved laws, most of which prohibit outside employment for a police officer at any time. The Resolution here in question is much less restrictive since it permits outside employment on the two days a week off, on holidays, and during vacations.

Plaintiffs' principal argument is that townships are creatures of the Legislature and are limited in power to do only those things "expressly" authorized. *See Trevorton Water Supply Co. v. Zerbe Township,* 259 Pa. 31, 102 A. 328 (1917). Without disagreeing with or disapproving of that principle, we find that the First Class Township Code, in at least two places, authorizes such a provision:

"The board of township commissioners shall, subject to the civil service provisions of this act, appoint

and fix the number, rank and compensation of the members of the township police force. . . . The board of commissioners shall prescribe all necessary rules and regulations for the organization of the police force. . . ." Act of June 24, 1931, P. L. 1206, Art. XIV, §1401, as amended, 53 P. S. §56401.

` . . . .

"To establish, equip and maintain a police force, and to define the duties of the same." Act of June 24, 1931, P. L. 1206, Art. XV, §1502, cl. V, as amended, 53 P.S. §56505.

The other argument pressed by plaintiffs is that the Resolution is an arbitrary, unreasonable, and unnecessary restriction upon the plaintiffs' constitutional rights. While the argument which would properly be made before the Township Commissioners against the wisdom of such a Resolution would be persuasive, the legal justification for it is clear. Probably the clearest statement of the justification for putting police officers in a separate category was presented recently by Justice ROBERTS: "As we have just pointed out in Baxter v. Philadelphia, 426 Pa. 240, 231 A. 2d 151 (1967) the duties of and interests protected by police are of a sufficiently distinct character from those of other governmental employees to justify different terms of employment. More specifically, the special hazards to which policemen's duties expose them and the greater physical fitness which policemen need to adequately discharge their duties lead us to conclude that the Legislature was well within the bounds of reasonable and constitutionally permissible classification in allowing police to become eligible for retirement allowances at an age five years younger than that of other Allegheny County employees. See Iben v. Monaca Borough, 158 Pa. Superior Ct. 46, 43 A. 2d 425 (1945)." *Geary v. Allegheny County Retirement Board*, 426 Pa. 254, 259-60, 231 A. 2d 743, 746 (1967).

Plaintiffs argue that it is improper to change the conditions of their employment now that they are on the force. This argument must fall by the weight of the decision of the Supreme Court of Pennsylvania in *Kelly v. Jones*, 419 Pa. 305, 214 A. 2d 345 (1965). In that case the court, speaking through the late Justice MUSMANNO, upheld the right of the Legislature to change conditions of employment and quoted from the *Teachers' Tenure Act Cases*, 329 Pa. 213, 197 A. 344 (1938), wherein it was said: "The policemen and firemen, on the other hand, are not in a position to object to a change of their status by subsequent enactments." *Teachers' Tenure Act Cases, supra,* at 228, 197 A. at 354.

It is important to note, as Judge BOLTE did, that this Resolution does not preclude any outside employment by police officers. The officer is free to work on his two days' off each week, on holidays, and on his vacation. Whether a complete prohibition would be an unreasonable unconstitutional limitation will have to await the presentation of such a case.

The Final Decree of the court below is confirmed.

---

OPINION BY JUDGE KRAMER (CONCURRING IN PART AND DISSENTING IN PART) :

I concur with the majority's holding that this first class township has statutory authority to pass resolutions regulating the conditions of employment of police officers in a reasonable, legal and constitutional manner. I likewise concur with the majority's reasoning that because of the nature of a policeman's duties, such regulations properly may be more confining than upon other municipal employees. However, I feel compelled to register a dissent because it is clear to me that the resolution here in question is unreasonable and violates the constitutional rights of these police officers.

For the purpose of enabling the reader to grasp the full import of this dissent, the following is a verbatim reading of the resolution:

"RESOLUTION NO. 5-70 OF THE TOWNSHIP OF SHALER, COUNTY OF ALLEGHENY AND COMMONWEALTH OF PENNSYLVANIA.

"A RESOLUTION PROHIBITING THE OUTSIDE EMPLOYMENT OF POLICE OFFICERS OF THE TOWNSHIP OF SHALER.

"Whereas, the duties of a police officer by nature require that he be available for duty twenty-four hours per day; and

"Whereas, it is also necessary that he be in the most alert mental and physical condition when called;

"Now, Therefore, be it Resolved by the Board of Commissioners of the Township of Shaler as follows:

"1. The Board of Commissioners of the Township of Shaler deems it to be in the best interest of the Township of Shaler to prohibit the outside employment of police officers of the Township of Shaler.

"2. 'Outside employment' as used in this resolution shall include *all paid work of any nature whatsoever* but shall not include special police duty assignments which are made from time to time by the Chief of Police of the Township of Shaler, provided that payment therefor is made by the Township of Shaler to the police officer for such special police duty assignment and no remuneration is paid to the police officer by any other source.

"3. In the event that any police officer of the Township of Shaler is injured in the performance of outside employment, he shall not be entitled to any sick leave, and his return to employment on the Police Force will be contingent upon his ability to perform the duties of a police officer to the reasonable satisfaction of the Chief of Police of the Township of Shaler, the Township Manager, and a licensed physician to be designated by the Township of Shaler.

"4. This resolution shall not apply to days off, holidays, or vacations.

"5. Violation of this resolution shall be grounds for dismissal from the Police Force of the Township of Shaler.

"Passed and adopted this 17th day of April, Nineteen Hundred and Seventy, A. D..

F. Crawford
Secretary

(Seal)"
(Emphasis added)

Although the court below would have us *infer* that this resolution is for the purpose of controlling the "undivided loyalty and allegiance", "rigid discipline" and "availability" of a desired "military body", known as the Police Force of Shaler Township, the printed record does not support such an inference. The lower court alluded to the only inference in the printed record which indicates the real purpose of the resolution, and that is the retaliatory control of the off-duty income of police officers brought about by the recent requirement for enforced labor relations bargaining, whereby police officers have been able to gain increased pay for their police work. The intent set forth in the "Whereas" preamble is not supported by, and is inconsistent with, the body of the resolution, which plainly attempts to control, primarily, the economics of a police officer's off-duty income.

Under this resolution the police officer is restricted from "moonlight" work, *only* if he is paid for it. A police officer may not receive pay for carpentry work; yet he may do the same work, gratis, no matter how strenuous, for his church or at his home. Without any reservation, I deem this to be an unreasonable restriction of a police officer's off-duty income.

This is not to say that a municipality may not restrict reasonably a police officer during his off-duty

hours. Obviously, a municipality may provide regulalations whereby it prohibits, for instance, conflicts of interest,* or associations with known violators of the law, or conduct unbecoming an officer, etc. It would be a reasonable regulation to require that a police officer be physically alert and able to perform his duties and to require that he make known his general whereabouts during his off-duty hours. It is even possible that a regulation requiring a disclosure of outside work would be a reasonable regulation; but a regulation which is designed to regulate an officer's off-duty income is unreasonable.

There can be no doubt that a police officer knows he must be reasonably available for emergencies twenty-four hours a day; but nevertheless, a police officer has a right to a private life during his off-duty hours which the govermental employer has no power or right to restrict or prohibit in an unreasonable manner.

It is inconceivable to this writer that a police officer may not be required to do hard manual labor about his home or that his children are not entitled to his companionship and participation in the most strenuous of physical sports often required of a father. The acceptance of such a premise renders it impossible to uphold a resolution which prohibits that same kind of physical exertion merely because it is for financial remuneration. It would be interesting to know how many police officers in the Commonwealth of Pennsylvania

---

* Shaler Township here argued that there could be a conflict of interest if a police officer is called upon to carry out his police duties with a "moonlight" employer. This is a bit of sophistry for the same could be argued concerning a police officer's family, his religion, his fraternal organizations, his race, his nationality, and his friends. In view of the fact that the resolution permits outside employment by anyone for pay on his "days off, holidays or vacations", the conflict of interest argument of the Township is without merit.

have financed their children's college educations through "moonlighting" during off-duty hours.

The majority points to the exclusions of Paragraph 4 of the resolution as a sign of reasonableness. To the contrary, Paragraph 4 is in direct conflict with the preamble of the resolution and proves the unreasonableness of Paragraphs 1 and 2.

The record indicates that out of the ninety Shaler Township employees, only its twenty-two police officers* are restricted as to their off-duty income.

Although it has not been raised in this case, I must mention another possible reason for the unreasonableness of this resolution. That is, the contractual aspect of these police officers' rights. For example, Officer Brenckle is a life-long farmer and landscaper (a fact known to Shaler Township at the time he was initially employed). During the ten years he has served on the Shaler Township Police Force, he has continued to operate his farm and to do landscaping during his off-duty hours (a fact also known to Shaler Township). Unfortunately for him, he sells the produce he grows ("lettuce, onions, beets, tomatoes, etc.") to grocery stores. Under this resolution, he is offered the choice of resigning from the police force or of giving up his farming and landscaping businesses. Strangely, if he does this same off-duty work for no pay or profit, he may continue to do both. It is interesting to observe that it is difficult to imagine an out-of-doors activity which could provide more strength, vitality and general well-being for an individual on a police force than farming and landscaping. At the risk of becoming tiresome, I point out again that as a landscaper, if he cuts grass for his church for no pay, he can do so under the resolution. If he receives pay, he cannot.

---

* The entire Police Force of Shaler Township, excepting only the Chief of Police, are the plaintiffs in this case.

I also raise the question whether this resolution is not subject to the Act of June 24, 1968, P. L.    , No. 111, Section 1, 43 P.S. 217.1, which reads as follows: "Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty per cent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning *the terms and conditions of their employment,* including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act." (Emphasis added) The printed record indicates that there has been a collective bargaining agreement negotiated and entered into between the parties to this suit, i.e., the police officers and the Township. Whether the subject matter of "off-duty work for pay" was a subject for collective bargaining is unknown. Is it not possible that if these officers had known about this resolution, they would have demanded even higher salaries? In any event, if this resolution affects the "terms and conditions of their employment", then the Township should not change, by resolution, that which by statute should be bargained. Otherwise the statute quoted immediately above would be meaningless.

I have read all of the cases cited by the court below, and I find none of them to support a municipal resolution such as here, which is designed to control primarily the off-duty income of police officers. There is no Pennsylvania case directly in point.

A police officer by tradition and by his employment contract (and not specifically by statute) is expected to be on emergency call during his off-duty hours. In keeping with that expectation, a regulation may indirectly affect a policeman's off-duty income, but I find

no authority for a township of the first class to restrict directly his off-duty income.

The court below finds support for its position in the epigrammatic statement of Justice Oliver Wendell HOLMES in *McAuliffe v. City of New Bedford,* 155 Mass. 216, 220, 29 N.E. 517 (1892) a case involving a restriction on the solicitation of money by police officers for political purposes, that, "[McAuliffe] may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." It should be noted that even Justice HOLMES recognized that a police officer does have the constitutional right to freedom of speech. *See Olson v. Regents of University of Minnesota,* 301 F. Supp. 1356, 1359 (1969).

I hasten to add that in a later case Mr. Justice HOLMES in dissenting observed: "It is one of the misfortunes of the law that ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis." *Hyde v. U.S.,* 225 U.S. 347, 391, 56 L. ed. 1114, 1135 (1912).

*McAuliffe* has been cited in all of the public-employee-free speech cases I have researched, and over the years the HOLMES' epigram has been weakened. *Chalk Appeal,* 441 Pa. 376, 272 A. 2d 457 (1971). In *Garrity et al. v. New Jersey,* 385 U.S. 493, 500, 17 L. ed. 2d 562, 567 (1967), Mr. Justice DOUGLAS stated: "We conclude that policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights." He later observed in that case that these rights may not be conditioned by the state by the exaction of a price, namely a job.

In an Ohio case, *Roller v. Stoecklein,* 75 Ohio Law Abstracts 453, 456, 143 N.E. 2d 181, 183 (1957), where a police officer was removed from the force, by the Civil Service Commission, because he violated an order of his superior not to park his automobile where it was legally parked on a public street, the court re-

versed the Commission and stated: "The fact that a citizen is employed as a police officer does not constitute a waiver of any privilege granted by the constitution. Any construction or interpretation that directly or indirectly deprives a citizen of constitutional rights because he is a police officer would create incredible and despotic conditions."

In a loyalty oath case, *Wieman et al. v. Updegraff et al.,* 344 U.S. 183, 192, 97 L. ed. 216, 222 (1952), Mr. Justice CLARK said: "We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." He later observed that a regulation which restricts the continuing eligibility of employees to the class willing to conform to an unreasonable rule of conduct, *ipso facto* establishes an arbitrary classification, thereby denying equal protection, and is therefore unconstitutional.

The printed record in this case discloses that four of the twenty-two police officers are immediately affected by this resolution. This is an improper classification. I would hold that these police officers have been denied equal protection of the law. They have been denied unreasonably their constitutional right to privacy under the Pennsylvania Constitution, Article I, Section 1, which reads: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

From a practical standpoint, this resolution is also impossible of fulfillment, because in Paragraph 2, set forth above, it states that only "special police duty assignments" *paid for by the Township* are excluded

from the term "outside employment". The printed record shows that Shaler Township police are often called upon for voluntary overtime special police details paid for by the School District (i.e., Record, 48a), among others. The question arises: Will Shaler Township police officers continue to be called upon to volunteer for overtime, special police details for Shaler Township's school children? Under Paragraph 3 of the resolution set forth above, will a police officer injured while directing traffic, overtime, after a high school football game (paid for by the School District) be refused his sick benefits? The obvious answers are that this resolution is not compatible with the present expected operation of the Police Force of Shaler Township. It should be stricken down as vague and ambiguous.

This matter is before this Court on an appeal from the "Final Decree" of the court below holding the resolution valid and dismissing the complaint and application for an injunction, which came as a result of the filing of preliminary objections in the nature of a demurrer by the defendant Township. Although, for some reason not revealed by the printed record, testimony was taken by the court below in connection with the preliminary objections in the nature of a demurrer, I find it difficult to ascertain how, as a matter of law, the court below could determine the constitutionality of the resolution, if it accepts all of the properly pleaded allegations of the plaintiff's complaint as true. If the resolution is directed primarily toward controlling a police officer's off-duty income, as I find it clearly to be, then the Township should be required to deny it by answer and a full trial held on that question of fact. I would overrule the preliminary objections of Shaler Township and grant time to the Township to file an answer, after which a trial could be held on the merits.

Judge MANDERINO joins in dissent.